IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| JONATHAN CARY NICKLES, | § | |
| *also known as* | § | |
| JONATHAN NICKELS, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | 2:10-CV-011 |
| | § | |
| RICK THALER, | § | |
| Director, Texas Dep't of Criminal Justice, | § | |
| Correctional Institutions Division, | § | |
| | § | |
| Respondent. | § | |

## REPORT AND RECOMMENDATION TO DENY
## PETITION FOR A WRIT OF HABEAS CORPUS

Petitioner has filed with this Court a Petition for a Writ of Habeas Corpus by a Person in State Custody challenging a prison disciplinary conviction. Petitioner is presently incarcerated pursuant to several 2001 convictions for possession of a controlled substance out of Potter County, Texas. In November 2008, petitioner was found guilty of establishing an inappropriate relationship with a Texas Department of Criminal Justice (TDCJ) employee (disciplinary cause # 20090062632). The disciplinary proceedings took place at the Clements Unit in Potter County, Texas. As of the date the instant habeas application was filed, petitioner remained incarcerated in the Clements Unit. As punishment for the disciplinary rule infraction, petitioner lost ninety days of good-time credits, remained at line class III, and received forty-five days of commissary and cell restrictions. Petitioner's Step 1 and Step 2 grievances were unsuccessful.

I.

PETITIONER'S ALLEGATIONS

Petitioner appears to allege:

1. His due process rights were violated because there was no evidence supporting the determination of guilt.

2. Newly discovered evidence supports petitioner's contention that he did not commit the offense charged.

Respondent reads the petition as additionally raising claims that counsel substitute was ineffective and that TDCJ violated its own rules and policies. Petitioner mentions these claims only in passing and never provides any analysis on them. Considering the level of analysis provided by petitioner in the due process and newly discovered evidence claims, it appears to the Court that petitioner has not presented these two additional claims for substantive review in this habeas corpus petition.

To the extent petitioner meant to raise these two points as grounds of error, both grounds would fail. There is no right to counsel in prison disciplinary proceedings, and consequently there is no cognizable habeas corpus claim for ineffective assistance of counsel substitute. *See Baxter v. Palmigiano*, 425 U.S. 308, 315, 96 S.Ct. 1551, 1556, 47 L.Ed.2d 810 (1976). Likewise, any argument regarding TDCJ's failure to follow its established procedures, which do not implicate federal constitutional rights, is not cognizable on habeas corpus review. *See Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996).

II.
THE MERITS OF PETITIONER'S CONTENTIONS

*A. Due Process Rights*

Petitioner first contends his due process rights were violated because there was no evidence supporting the determination of guilt. Respondent avers this argument was not exhausted because while petitioner did contend there was no evidence supporting the guilty determination, he failed to

assert in both the Step 1 and Step 2 grievances that his due process rights were violated by the lack of evidence supporting the determination.

### 1.  The Issue is Exhausted

The Fifth Circuit has established "[a]s a general matter . . . a prisoner, who is of course typically uncounselled, need not present legal theories in his grievances." *Johnson v. Johnson*, 385 F.3d 503, 517 (5th Cir. 2004).  As long as a petitioner informs prison administrators of the problem, the issue is considered exhausted "whether or not the prisoner tells them the constitutional provisions that the problem implicates." *Id.* at 518.

In this case, petitioner contended in both his Step 1 and Step 2 grievance forms that the evidence was insufficient to support the guilty determination.  (Disciplinary Grievance Records [DGR], pgs. 1, 3).  Petitioner was not required to further specify that his due process rights were violated by the alleged lack of evidence.  *See Johnson*, 385 F.3d at 518.  The issue is properly exhausted.

### 2.  There was Some Evidence in the Record Supporting the Determination

Generally, federal courts have a "policy of minimum intrusion into the affairs of state prison administration." *Williams v. Edwards*, 547 F.2d 1206, 1212 (5th Cir. 1977).  A federal court may not retry a prison disciplinary dispute. *Smith v. Rabalais*, 659 F.2d 539, 545 (5th Cir. 1981).  It may not review the case *de novo*. *Stewart v. Thigpen*, 730 F.2d 1002, 1005-06 (5th Cir. 1984).  A federal district court is only allowed to consider whether the "actions of the disciplinary committee were arbitrary and capricious or an abuse of discretion." *Smith*, 659 F.2d at 545.  The court must uphold the disciplinary determination if there is "some evidence" in the record supporting it. *Superintendent, Mass. Correctional Inst. v. Hill*, 472 U.S. 445, 454, 105 S.Ct. 2768, 2774, 86 L.Ed.2d 356 (1985).  If "any evidence at all" supports the decision, a federal habeas court may not overturn it. *Smith*, 659 F.2d

at 545.

Although the evidence in this case is sufficient for purposes of habeas review, the case is not without issues. First, the charging instrument is not at all clear. Secondly, the evidence that was presented in the disciplinary hearing, and upon which the guilty determination was based, is indirect and circumstantial. In order for this Court to uphold the guilty determination, it considers the evidence in a light highly deferential to the fact finder, i.e., the disciplinary hearing officer. The officer in this case, however, failed to provide the basis or method by which the evidence was analyzed. Next, the exact offense charged is not clear. It is not clear whether it is inappropriate to establish a relationship with a TDCJ employee while they are actually employed or whether it is also a violation to establish such a relationship post employment. Lastly, while petitioner now seeks to have the federal courts adjudicate his claims, he elected not to attend the disciplinary hearing and present his claims there. The federal court should not be the place to initially present claims such as these.

Turning first to the sufficiency of the evidence issue, the evidence identified as supporting the guilty determination consists of four letters—one written from petitioner Nickels to his mother, two from Nickels to Amanda Graves, and one from Graves to Nickels. Graves was a corrections officer at the Clements Unit during part of the relevant time period. Evidence in the record indicates she worked for TDCJ from March 8, 2007 to July 9, 2007 and from February 19, 2008 to June 17, 2008. (Disciplinary Hearing Records [DHR], pg. 2). On April 14, 2008, Nickels was assigned to the same building in which Graves worked. (*Id.*). Thus, the two were generally located in the same building for approximately two months (mid-April 2008 to mid-June 2008).

The Court has reviewed the letters used as the basis for the guilty determination and notes they were dated, if at all, in October 2008, approximately four months *after* Graves resigned as a corrections officer for TDCJ. (DHR, pgs. 10, 17). Respondent, just like the disciplinary hearing officer, fails to

identify any evidence other than these four letters to support the conclusion that Nickels and Graves were romantically involved while Graves was a TDCJ employee.

The sum of the evidence in the letters indicating the two became involved while Graves was a TDCJ employee amounts to the following.

In the letter to his mother, Nickels stated,

> If you seen some of the women that worked, and you happen to pull one of the better ones and she makes it known to all, the people around here eat it up. Plus everybody liked her?[sic] She's been calling the radio and sending shout-outs, and that's all we got so everybody heard it. (DHR, pg. 6).

In his first letter to Graves, Nickels stated,

> You got lucky I didn't take [a hug] the first time I saw you. Yes, I did get your sent [sic] and your lushious [sic] lips. I was kissing those lips for a week. Do they feel and taste as good or better than what they used to? (DHR, pg. 10)

In his second letter to Graves, Nickels stated,

> I can count on one hand my happist [sic] memorys [sic]. And you take up two of them. Those memorys [sic] are when I first saw you, than [sic] again when I heard from you . . . I'm crushed by your absence. (DHR, pg. 25).

Nothing in the letter from Graves to Nickels indicates when the relationship began. (*See* DHR, pgs. 16-23).

If this Court's review were *de novo*, the undersigned is not convinced he would be able to reach the same conclusion as the disciplinary hearing officer. The letters in the record do not conclusively establish the existence of a relationship *during the time Graves was a TDCJ employee*. Instead, the letters raise the possibility the two were involved four months before the letters were written.

The fact that the undersigned would not necessarily reach the same conclusion as the disciplinary hearing officer, however, is not determinative. Under the law of the Fifth Circuit, the question is whether the disciplinary hearing officer's determination is unreasonable. *Smith*, 659 F.2d at 545. It was not unreasonable, and because there is "some evidence" on the record supporting

TDCJ's determination, the Court is unable to delve further into the case and determine when the relationship really began—an issue that TDCJ has yet to determine.

An evidentiary hearing would serve no purpose since there exists "some evidence" of record supporting the disciplinary adjudication. As it currently stands, a denial of the petition is warranted based on the record, and there is nothing indicating the evidence in the record is unreliable.

Unfortunately for Nickels, the Court does not conduct a *de novo* review of the disciplinary proceedings, and a review of the record establishes the disciplinary hearing officer's actions were not arbitrary and capricious. *See id.* There is some evidence, although minimal, in the record supporting the disciplinary hearing officer's determination. *See Hill*, 472 U.S. at 454, 105 S.Ct. at 2774.

### 3. Petitioner Has Failed to Explain the Letters

Nickels's actions have not helped clarify the issues. Nickels declined the opportunity to attend the disciplinary hearing. (DHR, pg. 29). While his counsel substitute relayed to the disciplinary hearing officer the fact that Nickels had known Graves since elementary school and that the relationship began after Graves left TDCJ, petitioner chose not to be present at the hearing to explain, from his viewpoint, the letters evaluated by the hearing officer, the relevant portions of which are quoted above.

Similarly, Nickels did not reply to the respondent's answer in this case. While a reply was not required, an explanation of the portion of the letters relied upon by respondent might have been helpful to petitioner. Petitioner has never explained those portions of the letters indicating he and Graves were involved in a personal relationship at a time when Graves was physically in the same location as Nickels. The failure to present any innocent explanation for the inculpatory statements in the letters is significant. *See Lockett v. Anderson*, 230 F.3d 695, 707 (5th Cir. 2000) (establishing the burden of demonstrating a constitutional violation is on the petitioner).

4. The Offense Report

The Offense Report in this case charges that on October 31, 2008 at 16:00 petitioner "established an inappropriate relationship with Amanda Graves CO II which had the potential to jeopardize the security of the agency, or compromise the effectiveness of the employee by writing letters to officer Graves of a romantic nature." (DHR, pg. 2). The accuracy of the offense report is questionable since Graves was no longer employed at TDCJ on the stated offense date of October 31, 2008. Petitioner has not raised the issue that TDCJ brought charges against petitioner in October 2008 for an offense that appears could have only happened at least four months before October 2008, nor has respondent addressed this issue. Although the Court would be unable to review a claim regarding these facts because petitioner has not exhausted the issue, the Court notes it is unsure the charge was correctly alleged.

*B. Newly Discovered Evidence*

Petitioner's second contention is that newly discovered evidence warrants reversal of the disciplinary decision.[1] The first piece of evidence petitioner presents is an affidavit from Graves executed on September 30, 2009, in which she states,

> During my employment at the William P. Clements Unit (TDCJ), I had absolutely no contact or communication with Jonathan Nickels (Nickles) # 1137488.
>
> I have known Jonathan since elem [sic] school sixteen years ago, which was long before my employment with TDCJ. I had no idea he was incarcerated, much less at the Clements Unit, until after I had left. I ran into Jonathan's brother who told me Jonathan was in the Clement's [sic] Unit. It was at that time that I started my correspondence with Jonathan.

---

[1] Respondent contends this point of error was not exhausted, but the undersigned finds this ground was exhausted. Petitioner has argued since his hearing that he and Graves knew each other for several years, and he now supports his contention with the yearbook excerpts in Exhibit 2 of his petition. Second, petitioner has consistently argued to TDCJ that the relationship began after Graves left TDCJ, which is an argument he now supports with the affidavit in Exhibit 1 of his petition. Because petitioner presented these arguments in both his Step 1 and Step 2 grievances, this point of error is exhausted.

(Petition for a Writ of Habeas Corpus by a Person in State Custody, doc. #1, filed Jan. 11, 2010, Exhibit #1, found on pg. 11). Petitioner additionally presents excerpts from what apparently is his elementary yearbook. One page purportedly from the 1989-1990 Wolflin Elementary yearbook shows a Jon Nickels in the fourth grade; another page of the yearbook shows an Amanda Graves in the third grade. (*Id.*, Exhibit #2, found on pgs. 12-14). Petitioner contends this evidence would have "undercut prison officials' claim that 'the relationship began when Graves was an employee.' Counsel substitute Pachecho was aware of the above yet chose not to present it." (*Id.* pg. 7).

First, the Graves affidavit was not signed until almost a year after the disciplinary hearing, so counsel substitute could not have presented the affidavit at the hearing. Second, a review of the disciplinary hearing tape confirms counsel substitute did inform the hearing officer that Nickels and Graves had known each other for several years. To the extent petitioner desired additional evidence on this issue be presented, he could have attended the hearing and sought to present it.

Second, a claim of newly discovered evidence, standing alone, is not a sufficient basis for habeas corpus relief. *See Herrera v. Collins*, 506 U.S. 390, 400, 113 S.Ct. 853, 860, 122 L.Ed.2d 203 (1993). A petitioner must also demonstrate an independent constitutional violation. *Id.* In this case, petitioner has failed to demonstrate any constitutional violation. Therefore, this claim must fail.

Additionally, the evidence likely would not have made a difference in the ultimate decision. It was established at the hearing that Nickels and Graves had known each other for several years, so the yearbook excerpts would have been cumulative. Petitioner Nickels averred the relationship began after Graves had left TDCJ. TDCJ, however, remained adamant that "[t]he relationship clearly began when [Graves] was an employee," (DGR, pg. 4), even though, as discussed previously, the charging instrument alleges a date *after* Graves left. The disciplinary hearing officer could have rejected the affidavit of Graves, who was at the time clearly romantically involved with Nickels, took Nickels's

last name as her own, and referred to herself as Nickels's wife.[2] Petitioner's second claim must fail.

## III.
## RECOMMENDATION

It is the RECOMMENDATION of the undersigned United States Magistrate Judge to the United States District Judge that the petition for a writ of habeas corpus filed by petitioner JONATHAN CARY NICKLES, *also known as* JONATHAN NICKELS, be DENIED.

## IV.
## INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Report and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this 9th day of April, 2012.

*(signature)*
CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE

---

[2] Moreover, the affidavit merely supports the argument petitioner consistently made in his grievance forms to TDCJ. As such, it does not qualify as "newly discovered" evidence. *See Dowthitt v. Johnson*, 230 F.3d 733, 742, (5th Cir. 2000) (stating evidence is not newly discovered if it merely offers further support for the substance of arguments already presented to the state court).

## * <u>NOTICE OF RIGHT TO OBJECT</u> *

Any party may object to these proposed findings, conclusions and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).